NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 230245-U

NO. 4-23-0245

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 5, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Woodford County |
| THOMAS J. TAZELAAR, | ) | No. 22CF124 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Charles M. Feeney III, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Zenoff and Lannerd concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court affirmed, finding (1) defendant received the effective
assistance of counsel, (2) the offenses were not committed as part of a single
course of conduct, and (3) the trial court did not abuse its discretion in imposing a
32-year sentence.

¶ 2    Following a September 2022 bench trial, defendant, Thomas J. Tazelaar, was
found guilty of four counts of burglary (720 ILCS 5/19-1(a) (West 2022)). The trial court later
sentenced defendant to 40 years' imprisonment.

¶ 3    In December 2022, defendant filed a motion for reconsideration of the sentence,
alleging the trial court abused its discretion and imposed an excessive sentence. In March 2023,
the court held a hearing on defendant's motion and reduced the sentence to 32 years'
imprisonment.

¶ 4        Defendant appeals, arguing (1) trial counsel provided ineffective assistance by failing to move for a directed verdict on the grounds the State did not prove he committed the offense of burglary on June 20, 2022, beyond a reasonable doubt; (2) his aggregate 32-year sentence violates section 5-8-4(f)(2) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5-8-4(f)(2) (West 2022)); and (3) the trial court imposed an excessive sentence. We affirm.

¶ 5                                    I. BACKGROUND

¶ 6                              A. The Charges and Bench Trial

¶ 7        In July 2022, a grand jury indicted defendant on four counts of burglary (720 ILCS 5/19-1(a) (West 2022)). The indictments alleged defendant, on June 20, 2022 (count 1), June 21, 2022 (count II), June 23, 2022 (count III), and June 24, 2022 (count IV), "knowingly and without authority entered a building located at 302 Ash Lane, East Peoria, Illinois, with the intent to commit therein a theft."

¶ 8        In September 2022, defendant's bench trial commenced, at which the following evidence was adduced.

¶ 9                                    1. *Donald Besler*

¶ 10       Donald Besler testified he owned Millpoint Mobile Home Park and Campground (Park), located approximately three miles south of Spring Bay, Illinois. The Park provided campsites and mobile home lots for rent, and Besler testified he collected rent and checked in campers at a two-bedroom house located at 302 Ash Lane in East Peoria, Illinois, which functioned as the Park's office.

¶ 11       Besler testified he hired defendant approximately one year before the offenses occurred, and defendant began living at the Park after a mobile home was "kind of given to

him." Besler usually employed two or three people at a time to perform general maintenance and landscaping. Besler's employees were also responsible for showing campers to their camping areas. If Besler was unavailable, his employees typically took campers to their area, and Besler would "come back later and check them in." Park employees were generally not allowed in the office. Besler testified that, other than one longtime employee and the cleaning lady, employees were not given keys to the office unless special circumstances required it. According to Besler, no Park employees were allowed in the office at night.

¶ 12 Prior to the offenses in June 2022, Besler testified he left anywhere between "a couple hundred" to "several thousand dollars in the office." However, Besler changed the office's locks and purchased a cellular "deer hunting camera" when he noticed money "disappearing" from the office's cash drawer, as well as $100 he set aside for the cleaning lady. He installed the camera "in the office on top of a grandfather clock that was pointing towards *** the front door" and ensured the camera was working properly. Besler also began leaving just $8 in the cash drawer at night, and he observed pry marks on the office's door and doorjamb when he put up the camera. The pry marks subsequently "got worse."

¶ 13 Besler testified the camera took photographs, which were automatically uploaded to a memory card and sent to his phone. The State then introduced four photographs labeled as People's exhibit Nos. 1 through 4, which, Besler testified, accurately represented the Park's office as it was on June 20, 2022, through June 24, 2022. In the first photograph of interest, timestamped at 10:02 p.m. on June 20, 2022 (People's exhibit No. 1), an individual can be seen exiting the Park's office wearing a backwards-facing baseball cap. The next photograph (People's exhibit No. 2) shows defendant entering the office at 8:10 p.m. on June 21, 2022. People's exhibit No. 3 depicts defendant entering the office at 12:02 a.m. on June 23, 2022,

holding a tool in his right hand, which, Besler testified, resembled a screwdriver. Finally, People's exhibit No. 4 shows defendant inside the office at 1:20 a.m. on June 24, 2022. Besler testified defendant did not have permission to be in the office at any of those times on any of those dates. The $8 Besler left "in the drawer every night" was missing the following day. Based on that, Besler estimated defendant stole at least $32.

¶ 14　　　　Besler testified he decided to confront defendant after defendant "broke the camera." According to Besler, the confrontation occurred on "the same day that [he] called the police" and Besler told defendant he "didn't want [defendant] around any more." Besler found the camera's batteries, memory card, and antenna while "tearing down" defendant's mobile home. And although Besler never recovered the camera's "phone card," he testified no additional money had gone missing from the office's cash drawer since reporting the incidents to police.

¶ 15　　　　　　　　　　　2. *Michael Mattern*

¶ 16　　　　Michael Mattern, a deputy with the Woodford County Sheriff's Office, testified he met with Besler at the Park's office at approximately 5:40 p.m. on June 24, 2022. Besler "wanted to file a theft report" and stated he "had camera evidence." Mattern then identified People's exhibit Nos. 1 through 4 as the photographs Besler showed him. Besler suspected defendant of the theft and told Mattern he had recovered the camera's memory card and batteries from defendant's mobile home. Mattern did not inspect the camera or its components. When Mattern attempted to speak with defendant at his trailer, Mattern was informed by a neighbor "that [he] wasn't there."

¶ 17　　　　As part of his investigation, Mattern took pictures of the damage to the Park office's door and doorjamb, which he identified as People's exhibit Nos. 8 and 9, respectively. Mattern testified the damage "looked as if it was newer." With respect to the damage done to the

office's door, Mattern "pointed out where the wood appear[ed] fresh as if it's a lighter color and *** not the color of the paint." Mattern testified the same was true of the office's doorjamb, noting "the wood has been disturbed and pressed in, and the paint is pushed and discolored."

¶ 18                                              3. *Defendant*

¶ 19         Defendant testified he began working at the Park in May 2021 and had resided in a trailer on the property since April 2022. While employed, defendant performed odd jobs around the Park, such as setting up or demolishing mobile homes, maintenance, and landscaping. He generally worked until "Besler wanted to call it a day."

¶ 20         Defendant testified he was asked to work in the office one week prior to June 24, 2022, because Besler "was intoxicated." Defendant claimed Besler gave him an office key, but he did not return it because he began working in the office more frequently. Defendant testified he worked in the office on June 20, 2022, for "like, 15 minutes," long enough "to have the person come in and put them on the lot and then go home." He testified he worked in the office again the following day but stated his hours "varied." Defendant also admitted being in the office at 12:02 a.m. on June 23, 2022, but insisted the tool in his hand was not a screwdriver based on how he held it. However, defendant acknowledged whatever tool he was photographed holding could easily fit between the office's door and doorjamb. Finally, defendant denied being in the Park's office at 1:20 a.m. on June 24, 2022, and claimed "it was a lot earlier than that. Like, midnight again." When asked why he was in the office during those early hours of the morning, defendant stated a camper came in needing "a spot for the night, and they were only *** going to stay one day." When asked, "What about the other day," defendant answered, "We always had campers come in."

¶ 21 After hearing closing arguments, the trial court found defendant guilty of all four counts of burglary. In doing so, the court found Besler's testimony honest and "very credible," noting, "[Besler] was very clear on those particular days he put $8 in there and every morning $8 was gone. And that was bait, *** and he caught a fish, and the fish is in the pictures."

¶ 22 B. Defendant's Sentence and Motion for Reconsideration

¶ 23 In November 2022, the trial court conducted defendant's sentencing hearing. The presentence investigation report (PSI) indicated defendant was 31 years old, had no children, and maintained close relationships with his parents and siblings. Defendant denied having ever been diagnosed with a mental disorder or condition. He further denied receiving any form of mental health counseling in the past. Defendant possessed a high school diploma and attended college courses while previously incarcerated but did not obtain a degree. Defendant's criminal history included seven felony convictions and one misdemeanor conviction. The PSI also indicated defendant had one pending case against him (Tazewell County case No. 22-CM-281) for obstructing identification.

¶ 24 The State recommended defendant be sentenced to 34 years' imprisonment. In support of its recommendation, the State highlighted defendant's criminal history and argued, "[F]rom the age of 18 to now, [defendant] has been in the court system repeatedly, for the same type of cases." The State further argued for the imposition of discretionary consecutive sentences under section 5-8-4(c)(1) of the Unified Code (730 ILCS 5/5-8-4(c)(1) (West 2022)). The State believed such sentences were "necessary for this defendant to understand that he cannot come into someone else's place of business, house, school, things like that. He can't take other people's stuff."

¶ 25         Defense counsel recommended defendant be sentenced to seven years'

imprisonment, despite defendant's eligibility for extended-term sentencing, and emphasized the

nonviolent nature of the offenses. In support of his recommendation, counsel noted there had

been "no contemplation of causing harm to anybody, or no showing that any harm was caused or

threatened." Counsel also asked the trial court to consider the assistance defendant provided to

his parents, who appeared to be in "ill health."

¶ 26         In sentencing defendant, the trial court considered the PSI, defendant's history

and characteristics, the nature of the offenses, the evidence presented at trial, and the statutory

factors in aggravation and mitigation. In mitigation, the court found "defendant's criminal

conduct did not cause nor threaten serious physical harm to another." Nor did defendant

"contemplate that his criminal conduct would cause or threaten serious physical harm to

another."

¶ 27         In aggravation, the trial court found a sentence was necessary to deter others from

committing the same offense and considered defendant's criminal history—which involved "this

exact same type of behavior"—to be "the most significant factor by far." The court stated:

> "You committed a burglary in 2009, and then *** you
>
> committed a felony theft. And *** after you were sentenced for the
>
> felony theft, you committed *** a Class 1 felony burglary of a
>
> school, or daycare, or worship facility. *** A mere three months
>
> *** after that burglary, you committed another felony, telephone
>
> harassment. You were sentenced to prison."

The court continued:

"And of course you learned so much from that experience of going to prison, that *** within two years you managed to commit a criminal damage to property here in Woodford [County]. *** And within eighth [*sic*] months of you being sentenced on that, you committed the Class 1 felony burglary of a school or daycare in Woodford County case 2014-CF-162. And within 11 months of that sentence *** on criminal damage to property, you committed another burglary of a school or daycare."

¶ 28 The trial court determined defendant was incapable of conforming his conduct to the requirements of the law, found defendant was a danger to the public, and imposed consecutive 10-year prison sentences for counts I through IV, totaling 40 years' imprisonment.

¶ 29 In December 2022, defendant filed a motion for reconsideration of his sentence. Defendant argued the trial court imposed an excessive sentence in light of the relevant factors in mitigation that his "criminal conduct did not cause serious physical harm to another" and he "did not contemplate that his criminal conduct would cause or threaten serious physical harm to another." Defendant further argued the court "failed to follow Article [I], Section [11] of the Illinois Constitution [(Ill. Const. 1970, art. I, § 11)], which states as follows: 'All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship.' "

¶ 30 In March 2023, the matter proceeded to a hearing on defendant's motion to reconsider the sentence. Following the parties' arguments, the trial court reiterated defendant had seven felony convictions, for which he was sentenced to two terms of probation that were terminated unsuccessfully and five terms of imprisonment. The court also noted "this case

- 8 -

represents the eighth, ninth, tenth, and eleventh felony of the defendant." But because defendant's 40-year sentence exceeded the State's recommendation, the court granted defendant's motion and reduced his sentence to consecutive 8-year prison terms for counts I through IV, totaling 32 years' imprisonment.

¶ 31    This appeal followed.

¶ 32                                II. ANALYSIS

¶ 33    On appeal, defendant argues (1) trial counsel provided ineffective assistance by failing to move for a directed verdict on the grounds the State did not prove him guilty beyond a reasonable doubt of count I, (2) his aggregate 32-year sentence violates section 5-8-4(f)(2) of the Unified Code (730 ILCS 5/5-8-4(f)(2) (West 2022)), and (3) the trial court imposed an excessive sentence. We address each of defendant's arguments in turn.

¶ 34                     A. Ineffective Assistance of Counsel

¶ 35    Defendant first argues he was denied the effective assistance of his trial counsel when counsel failed to move for a directed verdict regarding count I at the close of the State's case-in-chief. A defendant's claim of ineffective assistance of counsel is analyzed under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Veach*, 2017 IL 120649, ¶ 29, 89 N.E.3d 366. To prevail, "a defendant must show that counsel's performance was (1) deficient and (2) prejudicial." *People v. Westfall*, 2018 IL App (4th) 150997, ¶ 61, 115 N.E.3d 1148. "Failure to satisfy either prong negates a claim of ineffective assistance of counsel." *People v. Hibbler*, 2019 IL App (4th) 160897, ¶ 88, 129 N.E.3d 755. " 'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, *** that course should be followed.' " *People v. Garcia*, 2021 IL App (1st) 190026, ¶ 26, 220 N.E.3d 309 (quoting *Strickland*, 466 U.S. at 697).

¶ 36    Prejudice is established when a reasonable probability exists, but for counsel's unprofessional errors, the result of the proceeding would have been different. *People v. Evans*, 209 Ill. 2d 194, 219-20, 808 N.E.2d 939, 953 (2004). "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." (Internal quotation marks omitted.) *People v. Moore*, 2020 IL 124538, ¶ 29, 161 N.E.3d 125. " 'The likelihood of a different result must be substantial, not just conceivable.' " *People v. Pope*, 2020 IL App (4th) 180773, ¶ 63, 157 N.E.3d 1055 (quoting *Harrington v. Richter*, 562 U.S. 86, 112 (2011)). "When presented with a motion for a directed verdict, '[a] court is compelled to direct a verdict in favor of defendant *** if, in viewing all evidence in favor of the State, the evidence *overwhelmingly* favored defendant such that the jury could not have concluded otherwise.' " (Emphasis in original.) *People v. Bruemmer*, 2021 IL App (4th) 190877, ¶ 59, 192 N.E.3d 823 (quoting *People v. Rascher*, 223 Ill. App. 3d 847, 854, 585 N.E.2d 1153, 1158 (1992)).

¶ 37    Here, defendant argues the State failed to prove he knowingly and without authority entered the Park's office with the intent to commit a theft on June 20, 2022. See 720 ILCS 5/19-1(a) (West 2022). Defendant contends, had his trial counsel moved for a directed finding, it would have been granted because "none of the admitted photographs show [him] in the office on June 20, 2022." Therefore, the trial court would have had no choice but to rely on Besler's testimony, which defendant characterizes as "incomplete, contradictory, and insufficient." But, in determining whether a directed verdict is appropriate, "[t]he trial judge does not pass upon the weight of the evidence or the credibility of the witnesses in testing the sufficiency of the evidence to withstand a motion for a directed verdict." *People v. Connolly*, 322 Ill. App. 3d 905, 915, 751 N.E.2d 1219, 1227 (2001). Instead, "a motion for a directed verdict *** asks whether the State's evidence *could support* a verdict of guilty beyond a reasonable

- 10 -

doubt, not whether the evidence *does in fact support* that verdict." (Emphases in original.) *Connolly*, 322 Ill. App. 3d at 915. Considering the evidence most strongly in the State's favor, we cannot find defendant suffered any prejudice resulting from trial counsel's decision not to move for a directed finding because the evidence did not overwhelmingly favor defendant so as to make a not guilty verdict inevitable.

¶ 38    During its case-in-chief, the State presented witness testimony and photographs suggesting defendant was in the Park's office without permission, thereby inviting the trial court, as fact finder, to infer defendant stole money from the office's cash drawer on four nights in June 2022. Prior to the break-ins, Besler testified he left anywhere between "a couple hundred" to "several thousand dollars in the office." However, Besler changed the office's locks and purchased a cellular "deer hunting camera" after he noticed money "disappearing" from the office's cash drawer, as well as $100 he set aside for the cleaning lady. He installed the camera "in the office on top of a grandfather clock that was pointing towards *** the front door" and ensured the camera was operating correctly. Besler also began leaving only $8 in the office's cash drawer at night, and when he put up the camera, he observed pry marks on the office's door and doorjamb, which subsequently worsened. Mattern testified the damage to the door "appear[ed] fresh as if it's a lighter color and *** not the color of the paint." The same was true of the doorjamb. Mattern testified the wood was "disturbed and pressed in, and the paint [was] pushed and discolored."

¶ 39    According to Besler, the camera took still photographs that were automatically uploaded to a memory card and sent to his phone. The State then introduced four photographs labeled as People's exhibit Nos. 1 through 4, which were admitted into evidence. Besler testified People's exhibit Nos. 1 through 4 accurately represented the Park's office as it was on June 20,

2022, through June 24, 2022. People's exhibit No. 1 showed an individual exiting the Park's office wearing a backwards-facing baseball cap at 10:02 p.m. on June 20, 2022. People's exhibit No. 2 showed defendant entering the office at 8:10 p.m. on June 21, 2022. People's exhibit No. 3 depicted defendant entering the office at 12:02 a.m. on June 23, 2022, holding a tool in his right hand which, Besler testified, resembled a screwdriver. People's exhibit No. 4 showed defendant inside the office at 1:20 a.m. on June 24, 2022. Defendant did not possess an office key, and Besler testified defendant did not have permission to be in the office at any of those times on any of those dates. In fact, none of Besler's employees were allowed in the office at night. Moreover, the $8 Besler placed "in the drawer every night" was missing the following day, causing Besler to estimate defendant stole at least $32. He also found pieces of the broken camera in defendant's trailer, specifically the camera's batteries, memory card, and antenna. Besler never recovered the camera's "phone card," but he testified no additional money had gone missing from the office's cash drawer since reporting the incidents to police.

¶ 40 Accordingly, when viewing all the evidence in the State's favor, we cannot say it overwhelmingly favored defendant. See *Bruemmer*, 2021 IL App (4th) 190877, ¶ 59. In other words, a reasonable trier of fact could view this evidence and find defendant guilty of count I. See *Connolly*, 322 Ill. App. 3d at 915. Consequently, we conclude defendant suffered no prejudice as a result of defense counsel's decision not to move for a directed verdict. See *Hibbler*, 2019 IL App (4th) 160897, ¶ 88.

¶ 41 B. Improper Aggregate Consecutive Sentences

¶ 42 Next, defendant argues his sentence must be reduced, alleging his offenses were committed as part of a single course of conduct during which his criminal objective did not change and, thus, the maximum aggregate term of imprisonment should be 28 years, which is the

total of the maximum extended terms available for a Class 2 felony (730 ILCS 5/5-4.5-35 (West 2022)). Defendant acknowledges he did not properly raise this issue before the trial court but asks us to consider it as plain error or, alternatively, ineffective assistance of counsel.

¶ 43        Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court. See Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). The doctrine, however, serves as a narrow and limited exception to the general rule of procedural default. *People v. Ahlers*, 402 Ill. App. 3d 726, 733, 931 N.E.2d 1249, 1255 (2010). This court may review unpreserved issues under the plain error doctrine, which we have explained as follows:

> "The plain-error doctrine allows a court to disregard a defendant's
>
> forfeiture and consider unpreserved error in two instances:
>
> '(1) where a clear or obvious error occurred and the
>
> evidence is so closely balanced that the error alone threatened to
>
> tip the scales of justice against the defendant, regardless of the
>
> seriousness of the error and (2) where a clear or obvious error
>
> occurred and that error is so serious that it affected the fairness of
>
> the defendant's trial and challenged the integrity of the judicial
>
> process.' " *People v. Matthews*, 2017 IL App (4th) 150911, ¶ 16,
>
> 93 N.E.3d 597 (quoting *People v. Belknap*, 2014 IL 117094, ¶ 48,
>
> 23 N.E.3d 325).

¶ 44        Defendant asserts his claim is cognizable as first-prong plain error. "Under the first prong of plain-error analysis, '[w]hat makes an error prejudicial is the fact that it occurred in a close case where its impact on the result was potentially dispositive.' " *People v. Stevens*, 2018

IL App (4th) 160138, ¶ 71, 115 N.E.3d 1207 (quoting *People v. Sebby*, 2017 IL 119445, ¶ 68, 89 N.E.3d 675). "Thus, for purposes of the first prong, the claimed error—substantial or not—has to be *of such a nature* that it might have tipped the scales against the defendant." (Emphasis in original.) *People v. Ely*, 2018 IL App (4th) 150906, ¶ 18, 99 N.E.3d 566. "In determining whether the evidence adduced at trial was close, a reviewing court must evaluate the totality of the evidence and conduct a qualitative, commonsense assessment of it within the context of the case." *Sebby*, 2017 IL 119445, ¶ 53.

¶ 45 "Under both prongs of the plain-error analysis, the burden of persuasion remains with the defendant. [Citation.] As the first step in the analysis, we must determine whether any error occurred at all." *Matthews*, 2017 IL App (4th) 150911, ¶ 17. "If error did occur, we then consider whether either prong of the plain-error doctrine has been satisfied." *People v. Sykes*, 2012 IL App (4th) 111110, ¶ 31, 972 N.E.2d 1272.

¶ 46 Section 5-8-4 of the Unified Code states, in pertinent part:

"For sentences imposed under the law in effect on or after February 1, 1978, the aggregate of consecutive sentences for offenses that were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective shall not exceed the sum of the maximum terms authorized under Article 4.5 of Chapter V for the 2 most serious felonies involved, but no such limitation shall apply for offenses that were not committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective." 730 ILCS 5/5-8-4(f)(2) (West 2022).

¶ 47            " 'The determination of whether a defendant's actions constitute a single course

of conduct' or is part of an unrelated course of conduct 'is a question of fact for the trial court to

determine, and a reviewing court will defer to the trial court's conclusion unless that conclusion

is against the manifest weight of the evidence.' " *People v. Robinson*, 2015 IL App (1st) 130837,

¶ 102, 35 N.E.3d 1095 (quoting *People v. Hummel*, 352 Ill. App. 3d 269, 271, 815 N.E.2d 1172,

1174 (2004)). "So long as the trial court's conclusion is supported by the record, *i.e.*, not

unreasonable or arbitrary, we will not reverse its decision." *People v. Daniel*, 311 Ill. App. 3d

276, 287, 723 N.E. 2d 1279, 1289-90 (2000).

¶ 48            Here, although the trial court made no explicit finding regarding whether

defendant's offenses were part of an unrelated course of conduct, "there is a presumption that a

trial court knows the law and applies it." *Robinson*, 2015 IL App (1st) 130837, ¶ 103; see *People

v. Majer*, 131 Ill. App. 3d 80, 83, 475 N.E.2d 269, 271 (1985) ("Because a court of review

cannot presume the existence of an error that the record does not demonstrate affirmatively, it

must resolve silence in the record against the defendant."). Because defendant's 32-year prison

sentence exceeds the sum of the maximum terms allowed for two Class 2 felonies (see 730 ILCS

5/5-4.5-35(a) (West 2022)), we must presume the court found the offenses were not committed

as part of a single course of conduct during which there was no substantial change in the nature

of the criminal objective.

¶ 49            In resolving this issue, we note our supreme court encountered a somewhat

similar situation in *People v. Bole*, 155 Ill. 2d 188, 613 N.E.2d 740 (1993). In *Bole*, the

defendant pleaded guilty to three counts of criminal sexual assault. *Bole*, 155 Ill. 2d at 190. The

defendant committed the offenses against his 14-year-old stepdaughter on three separate days

within one week in February 1989. *Bole*, 155 Ill. 2d at 191. Ultimately, the trial court found the

offenses were committed as part of a single course of conduct and sentenced the defendant to three consecutive terms of imprisonment under the then-applicable provisions of section 5-8-4(a) of the Unified Code (Ill. Rev. Stat. 1989, ch. 38, ¶ 1005-8-4(a)). *Bole*, 155 Ill. 2d at 191. At that time, section 5-8-4(a) required consecutive sentences for the subject offenses when committed as part of a single course of conduct. *Bole*, 155 Ill. 2d at 198. However, on appeal, our supreme court analyzed whether the offenses were committed as part of a single course of conduct and ultimately concluded they were not. *Bole*, 155 Ill. 2d 194. In so finding, the supreme court acknowledged the offenses were part of a long-standing pattern of sexual abuse but noted the assaults were "separate events, committed several days apart, with substantial interruptions in time." *Bole*, 155 Ill. 2d at 193-94.

¶ 50 Defendant, on the other hand, urges us to rely upon the Second District's unpublished decision in *People v. Thompson*, 2022 IL App (2d) 190950-U, but we find *Thompson* distinguishable. In that case, the defendant was found guilty of 12 counts of unlawfully disseminating child pornography after he sent four e-mails containing multiple lewd images to a single individual during an e-mail exchange lasting less than 90 minutes. *Thompson*, 2022 IL App (2d) 190950-U, ¶¶ 1, 42. Following the defendant's convictions, the trial court imposed consecutive 6-year prison sentences for each count, for a total of 72 years in prison. *Thompson*, 2022 IL App (2d) 190950-U, ¶ 2. On appeal, the defendant argued his acts constituted a single course of conduct during which his criminal objective did not change and thus, his aggregate 72-year sentence violated section 5-8-4(f)(2) of the Unified Code. *Thompson*, 2022 IL App (2d) 190950-U, ¶ 34. The Second District agreed, noting the longest gap in communication was for 49 minutes, and it determined the four e-mails sent by the defendant

were part of a single course of conduct "with no independent criminal objective breaking the course of conduct." *Thompson*, 2022 IL App (2d) 190950-U, ¶ 42.

¶ 51     Here, unlike in *Thompson*, the present offenses were not committed within minutes of each other during a single interaction which lasted less than 90 minutes, and we see no meaningful difference between the situation presented in *Bole* and this case. The record clearly establishes the burglaries were separate events, committed on four different nights spanning five days in June 2022, with substantial periods of time elapsing between them. *C.f. Bole*, 155 Ill. 2d at 193-94. As such, the instant offenses did not constitute a single course of conduct during which there was no substantial change in the nature of the criminal objective, and the trial court did not err in imposing consecutive eight-year sentences on all four counts of burglary. See *Daniel*, 311 Ill. App. 3d at 287. Accordingly, our plain error analysis need go no further because "without error, there can be no plain error." (Internal quotation marks omitted.) *People v. Hood*, 2016 IL 118581, ¶ 18, 67 N.E.3d 213. Additionally, "the absence of error nullifies any ineffective assistance of counsel argument because counsel's performance is not deficient for failing to raise a meritless issue." *People v. Stone*, 2018 IL App (3d) 160171, ¶ 20, 100 N.E.3d 672.

¶ 52                              C. Excessive Sentence

¶ 53     Finally, defendant contends his 32-year sentence is excessive and asks this court to exercise its authority under Illinois Supreme Court Rule 615(b)(4) (eff. Jan. 1, 1967) and reduce his sentence to seven years' imprisonment or remand for a new sentencing hearing.

¶ 54     When the trial court's sentencing decision is within the statutory range for the offense, it will not be disturbed absent an abuse of discretion. *People v. Aquisto*, 2022 IL App (4th) 200081, ¶ 111, 205 N.E.3d 812. A sentence constitutes an abuse of discretion where it is

greatly at variance with the spirit and purpose of the law or where it is manifestly disproportionate to the nature of the offense. *Aquisto*, 2022 IL App (4th) 200081, ¶ 111. In determining what sentence to impose, the trial court may consider (1) the defendant's history, character, and rehabilitative potential, (2) the seriousness of the offense, (3) the need to protect society, and (4) the need for punishment and deterrence. *People v. Klein*, 2022 IL App (4th) 200599, ¶ 34, 203 N.E.3d 961. The seriousness of the offense is the most important sentencing factor, and the trial court need not give greater weight to rehabilitation or mitigating factors than to the severity of the offense. *Aquisto*, 2022 IL App (4th) 200081, ¶ 112. We may not substitute our judgment for that of the trial court merely because we might have weighed a factor differently. *Klein*, 2022 IL App (4th) 200599, ¶ 37.

¶ 55 In the case before us, defendant was convicted of four counts of burglary, a Class 2 felony. 720 ILCS 5/19-1(a), (b) (West 2022). A person convicted of a Class 2 felony is subject to a sentencing range of three to seven years' imprisonment. 730 ILCS 5/5-4.5-35(a) (West 2022). But because defendant was eligible for an extended term sentence, he was subject to a sentencing range of 7 to 14 years' imprisonment. See 730 ILCS 5/5-5-3.2(b)(1), 5-4.5-35(a) (West 2022). When a sentence falls within the statutory range of sentences possible for a particular offense, it is presumed reasonable. *People v. Musgrave*, 2019 IL App (4th) 170106, ¶ 56, 141 N.E.3d 320. Since the trial court's eight-year sentence for each count falls within the relevant sentencing range, we will not disturb the sentence absent an abuse of discretion.

¶ 56 Defendant argues his sentence is excessive because it "is grossly disproportionate to the seriousness of the offense when considering the underlying facts," and his conduct represented the minimum necessary to account for the charged offenses. Defendant cites *People*

*v. Busse*, 2016 IL App (1st) 142941, 69 N.E.3d 425, and *People v. Allen*, 2017 IL App (1st) 151540, 95 N.E.3d 1162, to support his argument.

¶ 57    In *Busse*, the defendant received a 12-year prison sentence for burglary based on the theft of $44 in quarters from a university vending machine. *Busse*, 2016 IL App (1st) 142941, ¶ 1. The applicable Class X sentencing range was 6 to 30 years' imprisonment. *Busse*, 2016 IL App (1st) 142941, ¶ 26. On appeal, the appellate court reduced defendant's sentence to the minimum 6-year term because it concluded the 12-year sentence was disproportionate to the petty nature of the offense. *Busse*, 2016 IL App (1st) 142941, ¶¶ 34-37. In *Allen*, the defendant was sentenced to 10½ years in prison for burglary of a vehicle. *Allen*, 2017 IL App (1st) 151540, ¶ 7. On appeal, the appellate court, relying on *Busse*, held the defendant's sentence did not reflect the low level of seriousness of the offense, and thus, reduced the defendant's sentence to the six-year minimum of the Class X sentencing range. *Allen*, 2017 IL App (1st) 151540, ¶¶ 15, 22.

¶ 58    However, neither *Busse* nor *Allen* supports defendant's argument because they were decided on their particular facts and circumstances. See *People v. Cunningham*, 2018 IL App (4th) 150395, ¶ 55, 115 N.E.3d 423 (rejecting cross-case comparative sentencing as a basis for challenging a sentence). More importantly, this court has already disagreed with the reasoning in *Busse* and *Allen*, noting the respective majorities in those cases improperly substituted their own judgment for that of the General Assembly and the trial court. See *Cunningham*, 2018 IL App (4th) 150395, ¶¶ 53-55.

¶ 59    Here, the trial court considered the PSI, defendant's history and characteristics, the nature of the offenses, the evidence presented at trial, and the statutory factors in aggravation and mitigation. While the court recognized "defendant's criminal conduct did not cause nor threaten serious physical harm to another," the court ultimately found a 32-year sentence was

appropriate in light of defendant's extensive criminal history involving "this exact same type of behavior." Defendant's criminal record consisted of one misdemeanor conviction for criminal sexual abuse, seven felony convictions—*five* of which related to either burglary or theft—and one pending case for obstructing identification. Moreover, at the hearing on defendant's motion to reconsider, the court pointed out that despite unsuccessfully completing two terms of probation and serving five terms of imprisonment, "this case represents the eighth, ninth, tenth, and eleventh felony of the defendant." Given the present offenses, defendant's lengthy criminal background, and his potential to recommit similar offenses, we cannot say the court abused its discretion by sentencing defendant to 32 years' imprisonment in this case. See *Aquisto*, 2022 IL App (4th) 200081, ¶ 111.

¶ 60                                III. CONCLUSION

¶ 61        For all these reasons, we affirm the judgment of the trial court.

¶ 62        Affirmed.