NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250538-U

NO. 4-25-0538

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 30, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Rock Island County |
| EDWARD ROBERSON, | ) | No. 16CF839 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Norma Kauzlarich, |
| | ) | Judge Presiding. |

JUSTICE GRISCHOW delivered the judgment of the court.
Justices Zenoff and Harris concurred in the judgment.

**ORDER**

¶ 1     *Held*: The appellate court affirmed, holding (1) the trial court did not abuse its discretion or clearly err in denying defendant's motions for a mistrial, (2) defendant's convictions of home invasion and residential burglary did not violate the one-act, one-crime rule, and (3) defendant did not show clear error in the court's imposition of extended-term sentences for aggravated resisting and unlawful possession of a controlled substance.

¶ 2     Defendant, Edward Roberson, appeals from his convictions of Class X felony home invasion (720 ILCS 5/19-6(a)(1) (West 2016)), Class 1 felony residential burglary (*id.* § 19-3(a)), Class 4 felony aggravated resisting (*id.* § 31-1(a-7)), and Class 4 felony unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2016)). The trial court sentenced defendant to 20 years' imprisonment for home invasion, to run consecutive to concurrent prison terms of 15 years for residential burglary, 6 years for aggravated resisting, and 6 years for unlawful possession. The six-year terms were extended-term sentences.

¶ 3    On appeal, defendant contends (1) the trial court erred by denying his motions for a mistrial and counsel rendered ineffective assistance where counsel failed to preserve the issue regarding one of the motions for appeal, (2) the residential burglary conviction should be vacated under the one-act, one-crime rule because it was based on the same physical act as the home invasion conviction, and (3) the court improperly imposed extended-term sentences for aggravated resisting and unlawful possession.

¶ 4    We affirm.

¶ 5                        I. BACKGROUND

¶ 6    In October 2016, the State charged defendant, in part, with two counts of Class X felony home invasion (720 ILCS 5/19-6(a)(1) (West 2016)), with one count alleging defendant, who was not a peace officer acting in the line of duty, knowingly entered the dwelling place of Maurice Barnum, when defendant had reason to know one or more persons were present, was armed with a dangerous weapon other than a firearm, and threatened the imminent use of force upon Barnum within the dwelling place. The second count alleged the same but with respect to a different victim, Barnum's minor daughter, M.K.B.

¶ 7    The State also charged defendant with Class 1 felony residential burglary (*id.* § 19-3(a)), alleging defendant knowingly and without authority entered the dwelling place of Barnum with the intent to commit a felony therein. In addition, the State charged defendant with the Class 4 felonies of aggravated resisting (*id.* § 31-1(a-7)) and unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2016)). The aggravated resisting charge alleged defendant resisted the performance of a peace officer, Eugenio Barrera, in Barrera's arrest of defendant in that defendant fought and struggled with Berrera while armed with a knife, proximately causing injury to Berrera, consisting of abrasions to Berrera's arm and knees.

¶ 8        A jury found defendant guilty of aggravated resisting and unlawful possession of a controlled substance. Evidence from the first trial showed that defendant entered Barnum's home and later ran from the home. Defendant then later ran when Barrera, who was in full uniform, approached him near a gas station. Barrera chased defendant on foot, told him to stop, and then tackled defendant, pinning him to the ground. In the process, Barrera sustained injuries to his knees and wrists. Defendant was holding a stainless steel knife with a black handle at the time. When another police officer, Jack LaGrange, arrived, defendant tried to punch LaGrange. After refusing to put his hands behind his back, defendant was eventually handcuffed. Police found a small baggie of crack cocaine on the ground underneath defendant, which was believed to have fallen out of defendant's pocket when an officer was searching defendant's pockets.

¶ 9        The jury found defendant guilty of aggravated resisting and unlawful possession of a controlled substance but was unable to reach a verdict on the charges of home invasion and residential burglary. The trial court declared a mistrial as to those charges, and the State pursued a second trial. Before the second trial, the court granted defendant's motion *in limine* to bar the State from presenting evidence of Barrera's injuries and the cocaine because defendant was already convicted of unlawful possession of a controlled substance and aggravated resisting.

¶ 10        In June 2018, the second jury trial was held. M.K.B., age 14, testified, on October 16, 2016, she lived with her father, Maurice Barnum, and Rosalind Miles. M.K.B. testified a man came into her room in the middle of the night, waking her up. A television and a light were on, and the man turned those off and shut the door. The man told M.K.B. he would kill her if she told anyone. M.K.B. described the man as tall, Black, with short hair, and wearing black pants and red shoes. M.K.B testified the man took off her blanket, pants, and underwear, and he kissed her vagina with his lips. M.K.B. got up, put her pants on, and told the man she needed to use the bathroom.

The man told her not to tell anyone. M.K.B. did not know who the man was, nor had she ever seen him before that night.

¶ 11        M.K.B testified she left the room and made it to her father's bedroom when the defendant grabbed her left foot. This commotion caused her father to wake up. M.K.B. told him there was a man in her room.

¶ 12        Barnum testified he initially thought she was dreaming, but when M.K.B. repeated, " 'No, daddy, there is a man in my room,' " he got up, took M.K.B. with him, and went to the porch to get an axe handle. Barnum was on his way back to the bedroom when he was met by Miles, who said, "[T]here is somebody in there." M.K.B and Miles ran to a gas station down the street to use the phone. Barnum remained behind on the porch, waiting, when a man emerged around the corner with a knife in his hand, saying, "[C]ome on, come on, come on," and held up the knife.

¶ 13        Barnum described the man as a tall, shirtless, light-skinned Black man, with short black hair. The man came at Barnum, backing him up on the porch. Barnum swung the axe handle at the man and missed, and the man kicked Barnum in the chest. The kick sent Barnum stumbling backward into the yard. The man advanced on Barnum once more. Barnum swung again but missed. Barnum testified that the man appeared "dazed and confused" and was "looking straight through me just like come on, come on." After Barnum swung and missed again, the man started walking away, still holding the knife, and said, "I'll be back." Barnum went to the gas station just as a police officer pulled up. Barnum told him a shirtless, light-skinned man with short hair was just in his house and police would catch him if they went around the corner.

¶ 14        Barnum testified his family used the side entrance to the house, which had an enclosed porch. There was a door that led into the kitchen from the basement that was usually

locked, but Barnum was not sure it was locked that night. The morning after the break in, Barnum noticed the screen on the basement window was torn when it had not been torn before that night.

¶ 15       Barnum testified he did not keep condoms in his house. There was evidence concerning a condom wrapper found in the home on M.K.B.'s bed, and a condom matching the same brand as the wrapper fell from defendant's underwear after he was arrested. Forensic testing did not exclude defendant from DNA found inside of the condom.

¶ 16       Barnum was shown a photo lineup and picked someone but admitted he was not sure it was the man who was in his house. The detective who conducted the photo lineup testified defendant's photo had been included in the photo lineup.

¶ 17       Miles testified she had a criminal history, including eight retail theft convictions in 10 years and four felony convictions. Miles testified M.K.B. woke them up and said there was a man with a knife in her room. Barnum got out of bed, and M.K.B. followed him to the porch. Miles left the bedroom, and when she was in the living room, the man grabbed her arm and said, "shh, shh." The man had her arm in one hand and a knife with a black handle and a silver blade in his other hand. He said he would kill her if she said anything. Miles then ran to tell Barnum there really was someone in the house. Miles took M.K.B. to the gas station and called the police.

¶ 18       When shown the exhibit of a knife, Miles said she had one like it. At some point after the break in, she also noticed a knife was missing from the house. Miles identified defendant in court as the perpetrator.

¶ 19       On cross-examination, when the State asked Miles about her felony convictions, the following colloquy occurred:

"Q. You went and committed a crime of theft from a store, correct?

A. Yes, I did.

Q. And you were convicted?

A. Yeah, and I told them I did it. I didn't sit up here and lie about it.

Q. Okay. But you stole something?

A. I stole something—just like he came in that house he could tell the truth—just like I did.

Q. But you stole something—

A. I stole something and he came in there and messed with my daughter.

Q. Ma'am, you've got to wait till I finish asking the question.

A. I'm just telling you. Well, don't defend him, he know he did that shit.

[DEFENSE COUNSEL]: Your Honor, there is no question pending.

THE COURT: Ms. Miles.

THE WITNESS: What?

[DEFENSE COUNSEL]: I have no further questions, Your Honor.

THE WITNESS: You shouldn't have none. Ask him to tell the truth.

THE COURT: Ms. Miles.

[DEFENSE COUNSEL]: Your Honor, I would ask—

THE BAILIFF: Ma'am, don't say anything.

THE WITNESS: Just tell the truth.

THE COURT: The jury will disregard the last comments. Any questions based on—

THE WITNESS: I stole something and I told my story.

THE COURT: Ms. Miles, please.

[STATE'S ATTORNEY]: I have no questions.

THE COURT: No questions. Ms. Miles, thank you. You can step down.

THE WITNESS: Fucking liar. Mess with babies.

[DEFENSE COUNSEL]: Your Honor, would you ask her to be quiet and stop speaking in front of the jury?

THE COURT: Ms. Miles—Ms. Miles.

THE WITNESS: Thank you all. I hope you all believe me because—

THE COURT: Ms. Miles. The jury will disregard those remarks.

[DEFENSE COUNSEL]: Your Honor, may I approach the court outside the presence of the jury?

THE COURT: I'm going to excuse the jury."

¶ 20    Defense counsel moved for a mistrial, arguing Miles implied to the jury that because she committed a crime and told her story, defendant must also testify and tell his story. The trial court denied the motion and admonished the jury as follows:

"THE COURT: Please be seated. The jury is instructed to disregard any comments made by Ms. Miles that were not in a direct response to a question posed by either attorney. As I told you at the very beginning, and it holds true throughout this entire stage of the trial, [defendant] does not have to prove one iota, nothing. It is the State's burden, do you each and all understand that? And you continue to understand that? You're nodding your head yes. Can you say it out loud, okay. He does not have to present any evidence. If he chooses not to testify, you cannot hold that against him, do all of you understand that?

(All respond.)

THE COURT: *** [T]he question that was posed to her, whatever remarks

- 7 -

she made are not evidence to you all, do you understand that as well?

(All respond.)"

¶ 21 Officer Barrera testified he was dispatched to the gas station where he saw Miles and M.K.B. in their pajamas and Barnum in his underwear with a big stick in his hands. Barnum told him the suspect ran down the alley. Officer Barrera saw someone walking, so he activated his emergency lights. The man, later identified as defendant, was a Black male wearing a hat, dark jeans, a black shirt, and red shoes. Defendant put his hands up, so Officer Barrera got out of his squad car. Defendant then started running, and Officer Barrera chased him while yelling at him to stop. Officer Barrera tackled defendant and saw defendant had a knife in his hand. Officer LaGrange arrived and helped subdue defendant. Officer Barrera identified the exhibit of the knife as the knife that was taken from defendant and testified he also collected a cell phone, some currency, and a small baggie of crack cocaine. Officer Barrera also identified the squad car video of Officer LaGrange, which showed defendant wearing red shoes.

¶ 22 Defense counsel moved for a mistrial because Officer Barrera mentioned the cocaine in violation of the motion *in limine*. The State clarified it was a mistake, and the State did not intentionally elicit the testimony. The trial court instructed the jury to disregard the officer's last response.

¶ 23 After the State rested, defense counsel renewed his motions for a mistrial and moved for a directed verdict. Both motions were denied. The jury convicted defendant of residential burglary and two counts of home invasion.

¶ 24 Before sentencing, defendant filed a *pro se* motion for new trial alleging he received ineffective assistance of counsel. Counsel filed a motion for new trial, arguing, in part, that the trial court erred in granting defendant's motion for mistrial after Officer Barrera testified

about the cocaine. Counsel did not raise any issues with the denial of the motion for a mistrial following Miles's testimony. The court denied the motion, determining Officer Barrera's testimony regarding defendant's possession of a controlled substance was not the decisive factor in defendant's conviction.

¶ 25 At sentencing, defense counsel reported the presentence investigation report was only a records check due to defendant's refusal to cooperate with probation for the preparation of the report. Defense counsel did not provide evidence in mitigation. In aggravation, the State presented evidence from correctional officers who testified defendant spent half of his time in pretrial custody in disciplinary segregation due to combative, threatening, and uncooperative behavior involving altercations with both correctional officers and other inmates.

¶ 26 The trial court found consecutive terms were required to protect the public and sentenced defendant to 20 years' imprisonment on each of the two home invasion counts, to run consecutive to each other. The court also sentenced defendant to 15 years' imprisonment for residential burglary, 6 years' imprisonment for aggravated resisting, and 6 years' imprisonment for possession of a controlled substance, to run concurrently with each other and to the two home invasion counts.

¶ 27 Defense counsel filed a motion to reconsider sentence, and defendant filed *pro se* pleadings alleging ineffective assistance of counsel. Shortly after, defense counsel was allowed to withdraw because defendant had filed a complaint against him with the Attorney Registration and Disciplinary Commission. The trial court appointed new postsentencing counsel to represent defendant.

¶ 28 New defense counsel filed a motion to reconsider sentence, arguing the two home invasion convictions violated the one-act, one-crime rule. Counsel also argued the residential

burglary conviction should be vacated on one-act, one-crime grounds. At the hearing on the matter, the State conceded the one-act, one-crime rule applied to the two home invasion charges. Defense counsel argued the residential burglary conviction should be vacated because the residential burglary and the home invasion convictions involved the same act of the unauthorized entry into the home. The trial court found the elements and the victims were different. The court merged the home invasion convictions and sentenced defendant to 20 years' imprisonment on the count of home invasion in which M.K.B. was the named victim, to run consecutive to the remaining sentences. The court entered concurrent sentences of 15 years' imprisonment for residential burglary, 6 years for aggravated resisting, and 6 years for possession of a controlled substance. The 6-year terms were extended-term sentences.

¶ 29　　　　Defendant appealed, raising several issues. The appellate court reversed and remanded for an adequate preliminary inquiry into defendant's posttrial claims of ineffective assistance of counsel under *People v. Krankel*, 102 Ill. 2d 181 (1984). *People v. Roberson*, 2021 IL App (3d) 190212, ¶ 23. Because it was remanding the matter for posttrial proceedings, the court did not address defendant's remaining issues. *Id.*

¶ 30　　　　In December 2024, the trial court conducted a preliminary *Krankel* inquiry and heard claims defendant's counsel rendered ineffective assistance by (1) not allowing defendant to testify, (2) refusing to let defendant see the transcripts from the first trial, and (3) failing to investigate an exculpatory video. The court found defendant had not shown counsel was ineffective.

¶ 31　　　　This appeal followed.

¶ 32　　　　　　　　　　　　　　　II. ANALYSIS

¶ 33　　　　On appeal, defendant contends (1) the trial court erred by denying his motions for

a mistrial and counsel rendered ineffective assistance where counsel failed to preserve the issue regarding one of the motions for appeal, (2) the residential burglary conviction should be vacated under the one-act, one-crime rule because it was based on the same physical act as the home invasion conviction, and (3) the court improperly imposed extended-term sentences for aggravated resisting and unlawful possession.

¶ 34                                    A. Motions for Mistrial

¶ 35         Defendant contends that the trial court erred by denying his motions for a mistrial. He also asserts, to the extent counsel forfeited the issue regarding the motion concerning Miles's testimony by failing to raise it in a posttrial motion, counsel rendered ineffective assistance.

¶ 36                                    1. *Evidence of Cocaine*

¶ 37         Defendant first argues the trial court erred by failing to grant a mistral based on Officer Barrera's violation of the motion *in limine* when he mentioned recovering cocaine from defendant. The State acknowledges the testimony was inadmissible. However, the State argues the court did not abuse its discretion in denying the motion and defendant did not meet his burden of showing he was prejudiced by the inadvertent testimony.

¶ 38         "A mistrial should be granted where an error of such gravity has occurred that the defendant has been denied fundamental fairness such that continuation of the proceedings would defeat the ends of justice." *People v. Nelson*, 235 Ill. 2d 386, 435 (2009). "Where a motion for a mistrial has been denied, in addition to establishing prejudice, an appellant must also demonstrate that admonishments and curative instructions from the [trial] court could not remedy the damage from the improper comments." *People v. Pinkett*, 2023 IL 127223, ¶ 33. The violation of an order *in limine* will constitute a ground for mistrial only where the violation deprived the defendant of a

fair trial. *People v. Hall*, 194 Ill. 2d 305, 342 (2000). The decision whether to grant a motion for mistrial is in the discretion of the trial court. *People v. Bishop*, 218 Ill. 2d 232, 251 (2006).

¶ 39        Here, the trial court gave curative instructions to the jury. Defendant suggests those instructions were insufficient because the presence of cocaine coupled with testimony the perpetrator looked dazed and confused could have convinced them that defendant's consumption of cocaine motivated him to break into the home. However, given the strength of the evidence against defendant, compared to the brief mention of cocaine and curative instructions, we find defendant has failed to establish he was deprived of a fair trial.

¶ 40                              2. *Miles's Testimony*

¶ 41        Defendant next argues the trial court erred in failing to grant a mistrial based on Miles's testimony in which she repeatedly called defendant a liar. Defendant argues her outburst wrongly told the jury he was required to testify and explain his actions.

¶ 42        Defendant recognizes his counsel failed to raise the matter in a posttrial motion but argues counsel rendered ineffective assistance by failing to do so. Both an objection at trial and raising the issue in a posttrial motion are necessary to preserve an issue for appellate review. See *People v. Herron*, 215 Ill. 2d 167, 175 (2005). Thus, here, counsel forfeited the issue by failing to include it in a posttrial motion.

¶ 43        "Claims of ineffective assistance of counsel are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984)." *People v. Cathey*, 2012 IL 111746, ¶ 23. "To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Petrenko*, 237 Ill. 2d 490, 496 (2010). A defendant must satisfy both prongs of the *Strickland* standard, and the failure to satisfy either prong precludes a finding of ineffective assistance of

counsel. *People v. Clendenin*, 238 Ill. 2d 302, 317-18 (2010). When addressing a claim of ineffective assistance of counsel, appellate courts first consider whether the defendant has established a clear or obvious error. Absent a clear or obvious error, a theory of ineffective assistance does not afford the defendant any relief. *People v. Gilker*, 2023 IL App (4th) 220914, ¶ 78.

¶ 44 A genuine emotional outburst by a witness does not require a mistrial. *People v. Whitehead*, 169 Ill. 2d 355, 402 (1996), *overruled on other grounds*, *People v. Coleman*, 183 Ill. 2d 366 (1998). It has even been held a trial court's decision not to caution the jury against being influenced by a witness's emotional behavior did not constitute prejudice to the defendant. *Id.* (citing *People v. Hairston*, 10 Ill. App. 3d 678, 686 (1973)).

¶ 45 We do not find a clear or obvious error. "The decision whether to grant a mistrial because of incidents occurring during a proceeding is reserved to the sound discretion of the trial court." *People v. Howard*, 147 Ill. 2d 103, 145 (1991). "By virtue of his presence in the courtroom, the trial judge, rather than a court of review, is in a superior position to gauge the effect of an in-court occurrence on the jury." *Id.*

¶ 46 Here, the trial court concluded Miles's outburst was not so prejudicial or inflammatory that a mistrial was warranted. The court also admonished the jurors to disregard Miles's improper statements and reminded the jury that defendant was not required to prove anything. The outburst was an isolated incident during a trial with multiple witnesses, and there was no indication the jury would not have been able to heed the court's admonitions. Instead, the jurors expressly stated their understanding of the admonitions. Thus, on the record before us, we are unable to conclude the court abused its discretion in refusing to grant defendant's request for

a mistrial. See *id.* at 145-46. Accordingly, we also are unable to conclude defendant received ineffective assistance of counsel.

¶ 47                                    B. One-Act, One-Crime Challenge

¶ 48        Based on *People v. McLaurin*, 184 Ill. 2d 58, 106 (1998), defendant next contends his convictions of home invasion and residential burglary violated the one-act, one-crime rule because they were both based on the same physical act of entering a dwelling.

¶ 49        The one-act, one-crime rule prohibits multiple convictions which arise from the same physical act. *People v. Miller*, 238 Ill. 2d 161, 165 (2010); *People v. King*, 66 Ill. 2d 551, 566 (1977). When evaluating whether a conviction violates the one-act, one-crime rule, we must determine (1) whether the defendant committed multiple acts and (2) if so, whether any of the charges are lesser-included offenses. *King*, 66 Ill. 2d at 566; *People v. Rodriguez*, 169 Ill. 2d 183, 186 (1996). We review *de novo* whether a defendant's convictions violate the one-act, one-crime rule. *People v. Csaszar*, 375 Ill. App. 3d 929, 943 (2007).

¶ 50        Our supreme court has "defined 'act' as 'any overt or outward manifestation which will support a different offense.' " *People v. Price*, 2011 IL App (4th) 100311, ¶ 26 (quoting *King*, 66 Ill. 2d at 566). A defendant may be convicted of two offenses when a common act is part of both offenses. *Id.* As long as there are multiple acts as defined in *King*, the interrelationship of the offenses does not preclude multiple convictions. *Id.*

¶ 51        In *Price*, this court held the offenses of home invasion and residential burglary were not carved out of the same physical act because the home invasion offense required a second overt act of causing injury to a resident that was not present in the residential burglary offense, which was complete upon entry into the home. *Id.* ¶ 30, In doing so, we distinguished our supreme court's decision in *McLaurin*.

¶ 52    In *McLaurin*, the defendant entered the victim's house and set the victim on fire, causing the victim's death. *McLaurin*, 184 Ill. 2d at 104. The defendant was convicted of several offenses, including first degree murder, home invasion, aggravated arson, and residential burglary. *Id.* at 62-63. The *McLaurin* court held the offenses of home invasion and residential burglary had been carved from the same physical act of entering the dwelling. *Id.* at 106. The court also held the offenses of aggravated arson and intentional murder were carved from the same physical act of starting the fire. *Id.* at 106-07. However, the court held intentional murder and home invasion were not carved from the same physical act of setting the fire because the home invasion offense involved an additional physical act of entering the victim's dwelling. *Id.* at 105.

¶ 53    In distinguishing *McLaurin* in *Price*, this court noted the *McLaurin* court did not address (1) an earlier decision, *Rodriguez*, 169 Ill. 2d at 189, holding that, where multiple acts are present, their interrelationship does not preclude multiple convictions and (2) the fact the home invasion offense required the additional physical act of causing injury to a person in the dwelling, as compared to the residential burglary offense. *Price*, 2011 IL App (4th) 100311, ¶ 27. This court also found the *McLaurin* court's decision regarding home invasion and residential burglary was inconsistent with its earlier holding in the same case regarding the offenses of intentional murder and home invasion. *Id.* ¶ 28. On that issue, the court had followed *King*, noting "multiple convictions and concurrent sentences are permitted where a defendant has committed several acts, despite the interrelationship of those acts." *McLaurin*, 184 Ill. 2d at 105 (citing *King*, 66 Ill. 2d at 566)). Thus, in *Price*, we found the one-act, one-crime, rule did not preclude multiple convictions. *Price*, 2011 IL App (4th) 100311, ¶ 29.

¶ 54    In addition to the precedent set by this court in *Price*, we also note *McLaurin* did not expressly overrule previous cases that held residential burglary and home invasion were not

- 15 -

carved from the same physical act. See, *e.g.*, *People v. Jones*, 148 Ill. App. 3d 133, 145 (1986); see also *People v. Lobdell*, 121 Ill. App. 3d 248, 252 (1983). Further, since *Price* was decided, our supreme court has further explained its holding in *McLaurin*, making clear that *McLaurin* is distinguishable.

¶ 55   In *People v. Coats*, 2018 IL 121926, ¶ 20, our supreme court clarified, in *McLaurin*, the court's rationale was "evident from reviewing the defendant's conduct in relation to *all* of the convictions." (Emphasis added.) The court explained that, under the circumstances in *McLaurin*,

> "not only did the offense of residential burglary share the common act of unlawful entry [with home invasion], there was no additional act that could support a separate offense because the act of setting the fire had already been attributed to the murder conviction. [Citation.] Similarly, the aggravated arson conviction and the murder conviction were both carved from precisely the same physical act of setting the fire, and there was no additional physical act that could support the separate aggravated arson offense. *Id.*

¶ 56   Here, in contrast, the State charged defendant with residential burglary, alleging defendant knowingly and without authority entered Barnum's dwelling with the intent to commit a felony therein. The State also charged defendant with home invasion, alleging defendant knowingly entered Barnum's dwelling when he had reason to know one or more persons were present and, while armed with a dangerous weapon other than a firearm, threatened the imminent use of force upon M.K.B. Defendant's convictions for home invasion and residential burglary shared the act of unlawful entry into Barnum's home. However, as in *Price,* and unlike in *McLaurin*, the offenses were not carved out of the same physical act because the home invasion charge required the second, overt act of threatening the imminent use of force upon M.K.B. That

act was not present in the residential burglary offense, which was complete upon entry into the home. *Price*, 2011 IL App (4th) 100311, ¶ 30; see *People v. Lee*, 2012 IL App (1st) 101851, ¶ 54 (holding residential burglary and home invasion require the State to prove different elements for each crime and, thus, do not violate the one-act, one-crime rule). Accordingly, we find the one-act, one-crime rule does not bar defendant's convictions of both residential burglary and home invasion.

¶ 57                                    C. Sentence

¶ 58        Finally, defendant asks this court to reduce his extended-term sentences for Class 4 felony possession of cocaine and Class 4 felony aggravated resisting to the maximum authorized nonextended terms because he was sentenced to multiple extended terms without a finding the offenses were not part of the same course of conduct as the more serious offense of Class X felony home invasion.

¶ 59        Defendant concedes he failed to raise the issue in the trial court but argues either plain error or ineffective assistance of counsel applies. As previously noted, both an objection at trial and raising the issue in a posttrial motion are necessary to preserve an issue for appellate review. See *Herron*, 215 Ill. 2d at 175. However, this court will review forfeited challenges under the plain-error doctrine when

> "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant; or (2) a clear or obvious error occurred, and the error is so serious that it affected the fairness of the defendant's trial and the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Taylor*, 2011 IL 110067, ¶ 30.

The defendant has the burden of persuasion under both prongs of the plain-error analysis. *People v. Lewis*, 234 Ill. 2d 32, 43 (2009).

¶ 60 When addressing a claim of plain error and an alternative claim of ineffective assistance of counsel, appellate courts first consider whether the defendant has established a clear or obvious error. " 'Absent a clear or obvious error \*\*\*, neither the doctrine of plain error nor a theory of ineffective assistance affords any relief from the forfeiture.' " *Gilker*, 2023 IL App (4th) 220914, ¶ 78. When addressing whether there is a clear or obvious error, mere or arguable error is not enough. *People v. Manskey*, 2016 IL App (4th) 140440, ¶ 82. Instead, this court has stated "the error has to just about leap off the pages of the record." *Id.*

¶ 61 Under section 5-8-2(a) of the Unified Code of Corrections (730 ILCS 5/5-8-2(a) (West 2016)), an offender with multiple convictions may receive an extended-term sentence only for the class of the most serious offense for which the defendant was convicted. When multiple convictions are within the same, most serious class, the trial court may impose multiple extended terms for each of those offenses. *People v. Jordan*, 103 Ill. 2d 192, 207 (1984). Thus, here, had defendant not been convicted of a greater Class 1 felony, the court could impose extended terms for both of the Class 4 felonies.

¶ 62 In *People v. Bell*, 196 Ill. 2d 343, 354-55 (2001), our supreme court noted an exception to the rule that extended-term sentences may only be imposed for the offenses within the most serious class of offense of which the accused is convicted. There, the court stated:

> "If there was a substantial change in the nature of the criminal objective, the defendant's offenses are part of an 'unrelated course of conduct' and an extended-term sentence may be imposed on differing class offenses. If, however, there was no substantial change in the nature of the criminal objective, the

- 18 -

defendant's offenses are not part of an unrelated course of conduct, and an extended-term sentence may be imposed only on those offenses within the most serious class." *Id.*

¶ 63        "The determination of whether a defendant's actions constitute a single course of conduct or is part of an unrelated course of conduct is a question of fact for the trial court to determine, and a reviewing court will defer to the trial court's conclusion unless that conclusion is against the manifest weight of the evidence." (Internal quotation marks omitted). *People v. Robinson*, 2015 IL App (1st) 130837, ¶ 102; see *People v. Hummel*, 352 Ill. App. 3d 269, 271 (2004)); see also *People v. Tazelaar*, 2024 IL App (4th) 230245-U, ¶ 47. "A factual finding is against the manifest weight of the evidence only when the opposite conclusion is readily apparent or when the finding appears to be unreasonable, arbitrary or not based on the evidence." (Internal quotation marks omitted.) *Robinson*, 2015 IL App (1st) 130837, ¶ 102.

¶ 64        Contrary to defendant's argument, the trial court is not required to make an explicit finding that a defendant's criminal objective changed between the commission of the crimes at issue. Instead, "there is a presumption that a trial court knows the law and applies it." *Id.* ¶ 103; see *Tazelaar*, 2024 IL App (4th) 230245-U, ¶ 48. Accordingly, we presume the court reasoned there was a substantial change in defendant's criminal objective between the objective of the home invasion and the objectives of aggravated resisting and possession of a controlled substance. See *Robinson*, 2015 Il App (2d) 130837, ¶ 103.

¶ 65        In determining whether a defendant's multiple offenses are part of an "unrelated course of conduct" for the purposes of section 5-8-2(a), courts must consider whether there was a substantial change in the nature of the criminal objective. *People v. George*, 326 Ill. App. 3d 1096, 1103 (2002) (citing *Bell*, 196 Ill. 2d at 351-52). In deciding whether the trial court here clearly

erred in imposing extended-term sentences for aggravated resisting and possession of a controlled substance, we note several cases that have addressed scenarios in which there had and had not been a substantial change in the criminal objective when defendants committed an additional crime while fleeing from the scene of an earlier crime.

¶ 66        First, in *People v. Arrington*, 297 Ill. App. 3d 1, 2 (1998), the defendant was convicted of attempted robbery and aggravated battery, and the trial court imposed consecutive sentences. The aggravated battery occurred when, after the defendant attempted to rob an employee of a supermarket, the defendant struck a manager who blocked the defendant's exit and ordered the defendant to stop. *Id.* On appeal, the appellate court modified the consecutive sentences, holding the offenses were committed as part of a single course of conduct during which there was no substantial change in the defendant's criminal objective. *Id.* at 6. The court found the defendant's criminal objective was to rob the store and, inherent in any plan to rob a store, there was also an intention for the robber to escape from the premises with the proceeds of the crime. Because the evidence showed the defendant battered the manager only after the manager blocked the defendant's escape route, the defendant's motivation for striking the manager was not a newly conceived intention to inflict harm. Instead, it was an attempt to complete the original plan of a robbery and escape from the store. *Id.* at 5.

¶ 67        Similarly, in *Robinson*, the appellate court applied the reasoning of *Arrington* to the issue of an extended-term sentence. In *Robinson*, the defendant was convicted of residential burglary and aggravated battery. *Robinson*, 2015 IL App (1st) 130837, ¶ 1. Evidence presented at trial showed the defendant entered the victim's apartment, attempted to steal the victim's television, ran at the victim, who was blocking the defendant's exit, and bit the victim's lip. *Id.* ¶ 11. The trial court sentenced the defendant to 30 years' imprisonment for burglary and a

concurrent extended-term sentence of 7 years for aggravated battery. *Id.* ¶ 42. The appellate court reduced the sentence for aggravated battery. *Id.* ¶ 113.

¶ 68        The appellate court determined an extended-term sentence for aggravated battery was improper because the residential burglary and the aggravated battery were committed as part of a single course of conduct. *Id.* ¶ 107. Following *Arrington*, the court explained that a burglar who is attempting not to be detected maintains a constant objective to escape throughout the burglary, regardless of how he or she may have to effectuate the escape. *Id.* ¶ 107. The court further noted a plan to commit burglary would be futile if it did not include an escape with the proceeds of the crime. *Id.* Thus, the court reasoned that, to finish what the defendant had started, the attack had no objective independent of the original plan. *Id.* ¶ 108. The defendant did not have an independent objective to harm the victim. *Id.* Instead, the defendant's objective was to complete the burglary, and harming the victim was a means to effectuate that objective. *Id.* The *Robinson* court also suggested that to hold otherwise would mean "almost any time offenders ran from the police they would be liable for an extended-term sentence because their criminal objective had shifted from whatever crime they were effectuating to 'escape' " and such a result was incongruous with the test requiring a "substantial change in criminal objective." *Id.* ¶ 109.

¶ 69        In contrast, *Arrington* and *Robinson* have been distinguished in a scenario akin to the present case. In *People v. Fontanez-Marrero*, 2023 IL App (2d) 220128, ¶ 3, the defendant was convicted of various offenses, including aggravated battery by strangulation, a Class 1 felony, related to an attack on the victim at her home, which involved defendant holding scissors and choking the victim. After the attack, a police officer saw the defendant walking from the rear of the home, and the defendant fled, discarding a pair of scissors. *Id.* ¶ 6. A police officer in pursuit was injured. *Id.* As a result, the defendant was also convicted of resisting a police officer, for which

he received an extended-term sentence. *Id.* ¶¶ 3, 15. On appeal, the defendant argued the extended-term sentence was improper because it was not the most serious class offense of which he was convicted. *Id.* ¶ 26.

¶ 70 The appellate court disagreed and held the extended-term sentence on the lesser offense was proper because the resisting conviction was part of a separate course of conduct from strangling the victim. *Id.* ¶ 34. The court found the objective of the earlier offenses were to terrorize the victim and that purpose was fully accomplished when the defendant committed the acts inside the house. *Id.* The court distinguished *Arrington* and *Robinson*, observing that, unlike the robber's flight from the store in *Arrington*, or the burglar's flight from the premises in *Robinson*, the defendant's flight from the officer was not necessary to effectuate the defendant's purpose to undertake violent acts against a separate person in a different location. *Id.*

¶ 71 Here, unlike in *Robinson* and *Arrington*, defendant's possession of a controlled substance and act of aggravated resisting, causing injury to Berrera, arguably were not necessary for him to complete the objective of the crime of home invasion. The criminal objective in the home invasion was to threaten the imminent use of force upon M.K.B. As in *Fontanez-Marrero*, that was complete once defendant left the residence. Defendant's possession of cocaine and later flight from the police arguably were not necessary to accomplish that objective. However, we also note that, unlike in *Fontanez-Marrero*, there is evidence defendant was still actively fleeing the scene of the home invasion, which included an associated robbery, and the victims assisted police in preventing his escape by providing police with a description of defendant and directing the police where to go to apprehend him. Thus, as in *Robinson* and *Arrington*, there is evidence defendant was in the process of being impeded by others in effectuating an escape.

¶ 72 Ultimately, however, we note that we are reviewing the matter for a clear and obvious error. Given the differing logic of the cases addressing the issue, coupled with the fact defendant's criminal intent at the time of his encounter with the police is unclear, we conclude defendant has not shown a clear and obvious error.

¶ 73 Although, as previously discussed, there was evidence defendant was in the process of escaping the home invasion, there was also support for the conclusion defendant had completed that crime and was seeking to avoid being found with cocaine when he fled. Defendant was found with cocaine when he was arrested. He also was found with evidence connecting him to the home invasion. But standing alone, possessing a knife and condom on his person were not charged crimes, while possessing cocaine was. Thus, it is reasonable to believe defendant fled to avoid discovery of the cocaine, which was not connected to the home invasion. To the extent defendant's objective of aggravated resisting shared a criminal objective of continuing to possess the cocaine, the trial court could sentence defendant to extended terms for both of those crimes because they were in the same class of felonies. It is only their relationship to the home invasion that is at issue. Even if the act of fleeing was deemed to be connected, in part, to concealment of evidence of the home invasion, it is not clear that concealing evidence of that was defendant's objective when he fled.

¶ 74 Under these facts, the determination the offenses were part of an unrelated course of conduct is not unreasonable, and the opposite conclusion is not readily apparent, arbitrary, or not based on the evidence. Accordingly, defendant has not shown a clear and obvious error to support either a finding of plain error or ineffective assistance of counsel.

¶ 75 III. CONCLUSION

¶ 76 For the reasons stated, we affirm the trial court's judgment.

¶ 77 Affirmed.